## THE PEOPLE v. VÉLEZ.

### APPEAL from the District Court of Mayagüez.

#### No. 363.—Decided October 23, 1911.

CRIMINAL LAW—PASSING AND CASHING FORGED CHECK—BILL OF EXCEPTIONS AND STATEMENT OF FACTS.—In a bill of exceptions or statement of facts the arguments of counsel on the objections taken should not be included, but only the questions argued, stated briefly, and the rulings of the court thereon.

ID.—EVIDENCE—ERRORS IN ADMISSION OF EVIDENCE.—In cases tried by a court of law without a jury the admission of impertinent evidence for consideration by the judge together with all the other evidence is not an error which warrants the reversal of the judgment, because when deciding the case the court will weigh together all the elements of the evidence, giving to each the weight that it deserves.

ID.—CASHING FORGED CHECK—COMPARISON OF SIGNATURE OF DEFENDANT.—After an examination of the evidence introduced, the court held that it had been shown that the defendant passed the check knowing that it had been altered and the amount thereof raised, and the trial court did not commit error in allowing the signature of the defendant to be compared with a letter addressed by him to the person who signed the check in order to show that when he cashed the same he knew that the amount thereof had been altered, and the introduction of an expert in penmanship to examine the signature of defendant was unnecessary because it was not sought to establish that he had forged the check.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for appellant.

*Mr. Jesús M. Rossy,* prosecuting attorney, for appellee.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a prosecution for passing a raised check. The defendant is a boy 15 or 16 years old who, being found guilty, was sent to the reform school.

The information makes the following charge:

"On or about the 9th of August, 1910, in the city of Mayagüez, of the judicial district of Mayagüez, P. R., the accused, Agustín Vélez, bought several bicycle articles, worth $13 or $14, in the shop which Blas Panzardi owned, and still owns, in this city, and in payment of his purchase the said accused, Agustín Vélez, circulated and passed off as genuine a check, delivering it to said Blas Panzardi, who cashed the same and collected the amount of the purchase. Said check is copied as follows:

"'No. 104. San Juan, Porto Rico, Aug. 6, 1910. Depository for the Government of Porto Rico. American Colonial Bank. Depository for the United States. Pay to the order of Alfredo Román Fifty 17/100 Dollars. $50.17. (Signed) Matalena H. Koehler. Indorsed with the signature, Alfredo Román.'

"And said accused, Agustín Vélez, when circulating and passing off the said check as genuine knew that the same had been altered or forged, and he did so knowingly and maliciously and with the intention to defraud, as he did defraud, the said Blas Panzardi. This act is contrary to the law in such case provided and against the peace and dignity of The People of Porto Rico. (Signed) D. Sepúlveda, District Attorney."

The case was tried by the court without a jury and the defendant was found guilty as charged, and on March 30, last was condemned to one year's imprisonment in the penitentiary at hard labor, and to payment of the costs. He was sent to the school for juvenile delinquents to serve out his term.

An appeal was duly taken and a bill of exceptions and a statement of facts appear in the record, setting out the evidence adduced on the trial and the exceptions taken to the rulings of the court and even the arguments made by counsel in regard to the same.

This particularity is unnecessary and improper. All such extraneous matter as the arguments of counsel should be excluded from the bill of exceptions and the points stated briefly with the ruling of the court thereon. Trial judges should, before signing the same, require all such documents

to be put in proper shape for presentation here so as to lighten our labors instead of increasing them.

The exceptions taken may be briefly stated as follows:

"The court erred:

"First. Because the court authorized, notwithstanding the objection of counsel, the comparison of the forged check, which was the subject of the charge, with another document signed by the father of the accused but whose text, it was said, was written by the latter without the same being previously identified properly.

"Second. Because the court allowed the comparison of both documents notwithstanding the objection of counsel, who alleged that said evidence was immaterial and inconsistent with the information, as the same only charged the accused with having passed off as genuine the check in question knowing that it was forged or altered."

The evidence complained of was admitted by the court only as a circumstance tending to show the guilt of the accused to be weighed in the final determination of the cause, and in this no error was committed. The objection should have been made, as it was to some extent in the second exception, to the effect rather than to the admission of the evidence.

The case being tried by the court without a jury no prejudice resulted to the defendant from the rulings complained of, as the whole mass of facts was properly considered together in arriving at a final conclusion in the judgment rendered. (See *Belber* v. *Calvo* [16 P. R. R., 342], decided May 19, 1910.) And besides, if the trial court committed the errors alleged they were harmless as they were corrected in the consideration of the whole case and the rendition of the final judgment, so, as they did not prejudice the defendant, they afford no ground for reversal. (*The People of Porto Rico* v. *Milán*, 7 P. R. R., 442 and 444; *The People of Porto Rico* v. *Aibar*, 7 P. R. R., 518.)

It is claimed by the accused that the evidence is not sufficiently strong to warrant his conviction. Whatever conflict there is in the testimony is shown by the story of the

defendant that he had lost the check and the letter of intro-
duction, which were presented to Panzardi, and had not
seen them since.  Evidently the trial court did not believe
this statement.

The accused denies having been in the shop of Panzardi
and having brought the bicycle articles, for the payment of
which the letter from Liciaga and the altered check were de-
livered and which he said he had lost; but he states that he
sent a friend of his to buy the articles, but then he does not
tell the name of that friend, which he must have known.

The evidence may be summarized as follows:

Vicente Vélez, the father of the accused, had rented to
Miss Koehler, who was a school-teacher, a house belonging
to him in the town of Isabela, and the defendant usually
went to that lady to collect the rent of the house and to
give her a receipt.  The accused, on July 31, 1910, went to
Miss Koehler to collect the rent, presenting a receipt signed
by his father; and it turned out subsequently that the hand-
writing in this receipt, which was taken to the tenant by the
accused himself, was not the father's, who could not write,
nor the mother's, nor the brother's either, as far as it was
known, these being the only persons who composed the family
of the accused.

The defendant applied to Miss Koehler for a check for
$5.17 to buy certain articles in the United States.  This re-
quest was made by means of a paper signed by him and
written by him, and he asked her not to write anything in
the blank left in this class of documents to be filled in with
the name of the person in whose favor the same is drawn;
but, notwithstanding his request, Miss Koehler wrote out the
check for the said sum of $5.17, using the name of the accused
as payee.

At the same time that the accused applied to Miss Koehler
for the check he asked Severiano Liciaga for a letter of recom-
mendation to Blas Panzardi, of Mayagüez, in order to buy

from him at the lowest price certain articles pertaining to a
bicycle that the accused intended to purchase.

There is no doubt that the check issued by Miss Koehler
was for the sum of only $5.17 and in favor of Agustín Vélez,
and that said check was received by the accused exactly as
it came from the hands of Miss Koehler, and after these
documents were thus acquired by the accused nothing more
was heard about them until they were found in the posses-
sion of Blas Panzardi except, of course, the statement of the
defendant that he had lost them.

In the shop of Panzardi the delivery of the letter from
Liciaga was made exactly as it had been written by him, and
the check signed by Miss Koehler was also delivered but in a
completely altered form, bearing the name of Alfredo Román
instead of that of Agustín Vélez as payee, and, substituting
in the place of the words and figures expressing the sum of
$5.17 first written out those expressing the sum of $50.17.

Blas Panzardi was the party who was injured directly and
materially by the commission of the offense. He had no
personal interest in the prosecution of the accused, whom he
did not even know, and his only purpose was to recover the
sum of money of which he had been defrauded, and as that
sum was restored to him there was no need for him to insist
at the trial on showing or remembering that it was certainly·
the accused himself who went to his house to buy those art-
icles and to give in exchange therefor the altered check. But
notwithstanding that, Panzardi does not say that the accused
had not gone to his house; he only states that he cannot
remember after such a long time whether or not it was he
who came on that occasion; that he was told it was he, the
accused but that he did not recognize him in court. Still,
no other person is suggested or identified as the one who
passed the check. But the witness states, nevertheless, that
the person who took the check and passed it off on him as
genuine went to his house in the evening and he did not
see him any more thereafter. Evidently the merchant, after

having recovered the money of which he had been defrauded, became a reluctant witness.

The foregoing testimony shows a pretty strong case against the accused and we cannot say that the trial judge failed in weighing properly all the facts and circumstances set forth. He had the accused and all the witnesses before him and heard their testimony face to face.

Besides, there are other considerations to be had in regard to these facts which should not be lost to view. The only explanation given by Agustín Vélez of his connection with these events is that he had lost the check together with the letter; but he did not say that he took any steps to recover the documents, which undoubtedly were very important to him, since in order to get the check he had tried hard to save money, going so far as saving the eight cents that he would have had to pay if he had applied for a postal order. He did not communicate with the police, nor with his relatives, nor with Miss Koehler, about the loss of that document, nor did he notify the bank to stop payment of the check. Then, when the check, already altered, came up at Panzardi's, instead of making inquiries as to the person who brought it there in order to find out who was the author of the forgery or who tried to pass it off as genuine, he said absolutely nothing, and it was his father who came forward and paid Panzardi the amount of which he had been defrauded; and he did this without any obligation on his part to do so if the accused was entirely free from all connection with the chain of circumstances which constituted the commission of the offense.

This step taken by the father of the accused is very significant, as both the father and his son should have been very important actors in the detection of the offender whoever he might have been.

And it is likewise very significant that the finder should also have had to buy articles for a bicycle and should have gone to the very shop of Panzardi to trade with him, thus

affording an opportunity to be detected, because if the person who found that check had been somebody else than the accused he would probably have negotiated it elsewhere in order not to leave any trace of his agency in the matter.

Miss Koehler was not an expert in penmanship, but she stated that the handwriting of the accused, who was her pupil, was similar to that in the receipt for the rent of the house, dated July 31, 1910. As it was not a case of an examination by an expert penman to detect a forgery which had never been imputed to the accused, there was no need of undoubted documents, or of expert penmen, or of any other solemn formality to be performed at the hearing of the evidence. It was only a case of stating a collateral fact of some importance in the proceedings—that is to say, that the forger of the check was the same person who wrote the receipt for the collection of the rent from Miss Koehler—a document quite private and which was not presumed to have been written by anybody outside the family of the accused. But this fact is not in itself the only and decisive testimony at the hearing, but evidence was heard amounting to a moral certainly which, together with other circumstances surrounding the case, leads the mind to the conclusion that the accused availed himself of that check, being aware of the forgery committed by raising it, to obtain illegally a sum of money.

Upon a careful review of the whole record we cannot escape from the conclusion that the boy passed the check knowing it to have been altered and raised, if he did not do the forgery itself. As he was charged, not with the forging itself, but only with the passing, and convicted of that crime alone, we must let the judgment stand.

*Affirmed.*

Justices Wolf, del Toro and Aldrey concurred.

Mr. Chief Justice Hernández did not take part in the decision of this case.